UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
JUL 0 8 2015
MICHAEL J. ROEMER, CLERK
WESTERN DISTRICT OF NY

---

ANTHONY AIKENS (06-A-6139),

                Plaintiff,

v.

RAO, et al.,

                Defendants.

**REPORT AND
RECOMMENDATION**

13-CV-1088-WMS-JJM

---

Before me is defendants' motion for summary judgment [43].[1]  This motion,

being dispositive, has been referred to me by Hon. William M. Skretny for a Report and

Recommendation [23].  Oral Argument was held on May 26, 2015 [56].  For the following

reasons, I recommend that the motion be granted.

## BACKGROUND

Plaintiff, an inmate, commenced this action *pro se* pursuant to 42 U.S.C. §1983

against Jadow Rao, M.D., the Facility Health Services Director at Attica Correctional Facility

("Attica") and Sandra Michalek, the Nurse Administrator of Attica, alleging that they were

deliberately indifferent to his severe back pain associated with herniated and bulging discs,

degenerative disc disease, and degenerative cervical and lumbar spondylosis.  Amended

Complaint [27], ¶¶8, 9, 11.[2]  Specifically, he alleges that upon his transfer from Greenhaven

Correctional Facility ("Greenhaven") to Attica on June 25, 2012, two of his pain medications

---

[1]      Bracketed references are to the CM/ECF docket entries.

[2]      While defendants also interpret plaintiff's Complaint as alleging an equal protection claim (defendants' Memorandum of Law [49], pp. 10-11 of 15), no such claim appears to be contained in the Amended Complaint [27].

(Percocet and Naproxen) were discontinued and a third (Ultram)[3] was reduced to a lower dosage without him being seen by medical staff (id., ¶¶16-17).  He further alleges that he was seen by medical staff on August 2, 2012, by which time his pain medications were completely discontinued and he was given a back brace, with an accompanying permit effective for one year (id., ¶¶18-21, 30).  At that time, he was told by Dr. Rao that he would be given ibuprofen for his pain and that he should sign up for sick call if he required more (id., ¶21).  On the following day, plaintiff filed a grievance (no. 60003-12) complaining of the discontinuation of the pain medications he had received at Greenhaven (id., ¶22; [33], Bates Nos. 00024-26).

Plaintiff's ambulatory records attached to his Amended Complaint indicate that on August 17, 2012  he requested "ibuprofen for occasional aches and pains" and was provided with "10 pks" of ibuprofen. [27], p. 59 of 73.  The next entry in his Ambulatory Health Records is October 15, 2013, when he requested a new back brace after it was allegedly confiscated because his permit had expired (id.).[4]  During the intervening period of approximately 14 months between his August 17, 2012 and October 15, 2013 visits with medical staff, plaintiff allegedly submitted sick call requests, but these requests were "ignored and or denied" (id., ¶23).

---

[3]     Ultram is the generic version of Tramadol.  Rao Declaration [47], ¶18. It is referred to by both names in the record.

[4]     At the time plaintiff commenced this action on November 4, 2013, he had not received a new back brace.  He was subsequently  issued a permit for a back brace on November 26, 2013. Defendants' Statement of Undisputed Facts [44], ¶27.

## ANALYSIS

**A.      The Summary Judgment Standard**

"The standards governing summary judgment are well-settled.  Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant.  Summary judgment is improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party."  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

However, "[w]hen the moving party has carried its burden . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial* . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

In opposition to defendants' motion to summary judgment, plaintiff submitted a

series of documents (*see* [52, 53, 54, 55]) which I have considered in connection with this

motion. Following the May 26, 2015 oral argument, plaintiff made an additional submission in

opposition to defendants' motion for summary judgment directed to Judge Skretny. Since that

submission was not directed to me and was filed after plaintiff's May 15, 2015 deadline to

respond to defendants' motion for summary judgment, I have not considered it.


**B.      Deliberate Indifference to Plaintiff's Medical Needs**

In order to establish a violation of the Eighth Amendment arising out of

inadequate medical treatment, plaintiff must prove that defendants acted with "deliberate

indifference to [his] serious medical needs". Estelle v. Gamble, 429 U.S. 97, 104 (1976).

The "deliberate indifference" standard has both objective and subjective components. Hathaway

v. Coughlin, 37 F.3d 63, 66 (2d Cir.1994), cert. denied, 513 U.S. 1154 (1995). To satisfy the

objective component, the alleged medical need must be "sufficiently serious." Id.. Defendants do

not deny that plaintiff's back condition was a sufficiently serious condition. Instead, they

challenge the subjective prong, which requires the plaintiff to show that they acted with a

"sufficiently culpable state of mind" in depriving him of adequate medical treatment. Hathaway

v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

"The subjective element of deliberate indifference 'entails something more than

mere negligence . . . [but] something less than acts or omissions for the very purpose of causing

harm or with knowledge that harm will result.'" Id. *See also* Hernandez v. Keane, 341 F.3d 137,

144 (2d Cir. 2003), cert. denied, 543 U.S. 1093 (2005) (likening the necessary state of mind to

"the equivalent of criminal recklessness"). In order to be found "sufficiently culpable," the

official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; [he] must

both be aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837

(1994).

"[M]ere disagreement over the proper treatment does not create a constitutional

claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different

treatment does not give rise to an Eighth Amendment violation." Chance, 143 F.3d at 703.

Nevertheless, "[i]n certain instances, a physician may be deliberately indifferent if he or she

consciously chooses an easier and less efficacious treatment plan". Id.

Defendants interpret the Amended Complaint as alleging that they were

deliberately indifferent to plaintiff's medical needs by discontinuing his pain medications from

Greenhaven, by not permitting him to be seen by medical staff for 14 months after his pain

medication was discontinued, and by not providing him with another back brace following its

confiscation. Defendants' Memorandum of Law [49], p. 2 of 15.


### 1.    Termination of Plaintiff's Previously Prescribed Pain Medications

Although plaintiff alleges that his prescriptions for Percocet and Naproxen were

discontinued upon his arrival at Attica (Amended Complaint [27], ¶17), these allegations are

belied by the record.  Attached to plaintiff's Amended Complaint is his  June 25, 2012  health

screening report prepared when he entered Attica, which indicates that at that time he was only

prescribed Ultram.  [27], p. 50 of 73; [51], Bates No. 00378.  As Dr. Rao also notes, plaintiff's

prescription for Percocet was  discontinued while he was at Greenhaven and plaintiff had advised

staff at that facility that Naproxen[5] was not effective for his pain.  Rao Declaration [47], ¶¶10, 18; [51], Bates Nos. 00379, 00382.[6]

        With respect to the discontinuation of plaintiff's prescription for Ultram, his ambulatory health records demonstrate that Dr. Rao reviewed his medical chart on June 26, 2012, a day after his arrival at Attica, and noted that he had a history of a 25 foot fall in 1999 and complaints of lumbar radiculopathy.  Rao Declaration [47], ¶9; [51], Bates No. 00378.  He also noted that plaintiff had a history of polysubstance abuse and malingering (id.) and that as recently as June 18, 2012, he had advised the staff at Greenhaven that Ultram was  not effective for his pain.  Rao Declaration [47], ¶¶9-10; [51], Bates No. 00379.  Based upon Dr. Rao's review of plaintiff's "medical chart and his examination", he stated that he "made a medical determination to wean him off of the Ultram".  Rao Declaration [47], ¶11.[7]  Plaintiff was given Motrin in place of Ultram for his back pain on July 20, 2012.  Rao Declaration [47], ¶11; [51], Bates No. 00377.

        On August 2, 2012 plaintiff was examined by Dr. Rao for complaints of chronic lower back pain and requested that his prescription for Ultram be renewed. Rao Declaration [47], ¶12; [51], Bates No. 00377.  Dr. Rao again concluded that "there was no need for him to be taking Ultram, that he may have Motrin for pain and he was also provided with a permit for a

---

[5]      Naproxen is the generic version of Naprosyn. Rao Declaration [47], ¶18. It is referred to by both names in the record.

[6]      At Greenhaven plaintiff also received injections of Toradol, a nonsteroidal anti-inflammatory drug that is used short term to treat moderate to severe pain.  Rao Declaration [47], ¶8.

[7]      It does not appear that Nurse Administrator Michalek had any involvement in the decision to wean plaintiff from Ultram.  The record demonstrates that her involvement was limited to preparing a Memorandum dated August 8, 2012 to the Inmate Grievance Program Supervisor concerning plaintiff's August 3, 2012 grievance arising from the discontinuation of his pain medications (no. 6003-12) . [33], Bates No. 00031; Michalek Declaration [46], ¶11.

back brace" (id.).  He returned to sick call on August 17, 2012 and requested ibuprofen for

"occasional aches and pains" (id.).  He was given "10pks" of ibuprofen, and it was noted that he

complained of no other issues and did not appear to be in distress.  Rao Declaration [47], ¶13;

[51], Bates No. 00376.

Dr. Rao states that Motrin is "the drug of choice to address long standing chronic

back pain" , that "Ultram is deemed to not be appropriate for chronic conditions . . . because of

potential side effects, such as seizure, hepatotoxicity, abuse potential, severe depression and liver

and kidney problems", and that Ultram was "further contradicted based upon [plaintiff's] history

of polysubstance abuse and malingering".  Rao Declaration [47], ¶¶15-17.

"Not every physician will treat every ailment in exactly the same manner.  That

does not mean that one of the physicians must be acting with deliberate indifference to the

patient's needs."  Douglas v. Stanwick, 93 F.Supp.2d 320, 325 (W.D.N.Y. 2000).  Thus, "a

showing of nothing more than a difference of medical opinion as to the need to pursue one course

of treatment over another is insufficient, as a matter of law, to establish deliberate indifference."

Echevarria v. Canfield, 2014 WL 174109, *4  (W.D.N.Y.), adopted, 2014 WL 993831

(W.D.N.Y. 2014).

"Prison medical staff is given wide discretion in determining how to treat inmates.

Williams v. Smith, 2009 WL 2431948, *9 (S.D.N.Y.), recon. denied, 2009 WL 5103230

(S.D.N.Y. 2009).  "[D]eterminations made by medical providers within their discretion are given

a 'presumption of correctness' when it concerns the care and safety of patients", Mendoza v.

McGinnis, 2008 WL 4239760, *11 (N.D.N.Y. 2008).

Generally, "[t]he decision to prescribe one form of pain medication in place of

another does not constitute deliberate indifference to a prisoner's serious medical needs." Rush
v. Fischer, 923 F.Supp.2d 545, 555 (S.D.N.Y. 2013).  Nothing in the record suggests that Dr.
Rao's initial decision to wean plaintiff from Ultram and to provide him with Motrin and a back
brace was based on anything other than medical judgment.  Therefore, I recommend that this
portion of defendants' motion be granted. *See* Scott v. Perio, 2005 WL 711884, *6 (W.D.N.Y.
2005) ("Plaintiff has not offered any evidence that stronger medication was not provided for any
reason other than a medical decision.  It is not for the Court to second guess plaintiff's medical
providers as to what medicine or what dosage should have been prescribed to treat the plaintiff");
Rush, 923 F.Supp.2d at 555 ("[P]laintiff has provided no factual allegations that the decision to
provide ibuprofen in lieu of Percocet deviated from reasonable medical practice for the treatment
of his pain, much less that Nurse Gutouski acted with a culpable state of mind in making this
decision. The plaintiff's allegations demonstrate a 'mere disagreement over the proper treatment'
of his pain, which "does not give rise to an Eighth Amendment violation"); Josey v. Rock, 2013
WL 1500435, *9 (N.D.N.Y.), adopted 2013 WL 1501029 (N.D.N.Y 2013) (" Defendants . . .
have each filed declarations explaining their reasons for the courses of treatment that they chose
for Plaintiff . . . . Each of these doctors had concerns that Plaintiff was seeking Ultram for
non-medical reasons and that the medication was not the best treatment for Plaintiff's chronic
pain. Each examined Plaintiff fairly regularly and attempted to treat his complaints.  Plaintiff's
claims against these doctors amount merely to a disagreement with the course of treatment they
prescribed").

2.      **Failure to Acknowledge Plaintiff's Sick Call Requests**

Plaintiff states that he was denied "access to medical and treatment for 14 months", from August 17, 2012 to October 15, 2013 (Plaintiff's Third Memorandum of Law [55], pp. 2 of 39),[8] and that during this period he "tried repeatedly . . . to be seen by the Medical Dept. and wrote letters to the defendants concerning his severe condition and pain". Plaintiff's Memorandum of Law [52], p. 14 of 35, ¶12. Consistent with these allegations, the Amended Complaint attaches letters dated October 5, 2012, December 4, 2012, June 12, 2013, and February 15, 2013 from plaintiff to the "Nurse Administrator" complaining that he had not been allowed to attend sick call. [27], pp. 69-72 of 73.

Nurse Administrator Michalek states that "if the [plaintiff] had in fact written to me regarding a lack of medical treatment such a letter would be in his medical file and based upon a review of my file there is no such letter there". Michalek Declaration [46], ¶16. While she notes that there are a "myriad of ways that a patient can apprise the facility staff that he requires medical attention" (Michalek Declaration [46], ¶17), plaintiff's version of events - that he remained in severe pain for 14 months while she ignored his letters that his sick call requests

---

[8]      Although captioned as a Memorandum of Law [55], plaintiff declares under penalty of perjury the truth of its content (id., p. 6 of 39). Therefore, I consider the factual allegations contained in that submission to constitute admissible evidence. *See* Charney v. Zimbalist, 2014 WL 5064860, *11 n. 14 (S.D.N.Y. 2014) (Report and Recommendation) ("Each of Wilkov's memoranda of law states on the last page that it has been signed "under penalty of perjury," the phrasing contemplated by 28 U.S.C. §1746. We thus consider the factual statements contained in these memoranda to constitute sworn testimony for purposes of this summary judgment motion"); McGill v. University of Rochester, 2013 WL 5951930, *1 (W.D.N.Y. 2013), aff'd, 600 Fed.Appx. 789 (2d Cir. 2015) (Summary Order). The same holds true for his Memorandum of Law ([52], pp. 6, 16 of 35).

were being disregarded - if proven at trial, are sufficient for a reasonable jury to conclude that

Nurse Administrator Michalek knew that plaintiff was in severe pain and acted deliberately to

deny him treatment. *See* Lainfiesta v. Livermore, 2013 WL 2404021, *9 (N.D.N.Y. 2013)

("[T]he absence of sick-call entries does not vitiate against claims of continuing medical need or

deliberate indifference since part of Lainfiesta's claim is that Livermore prevented him from

obtaining medical care through sickcall procedures. As such, defendants' emphasis on the

number of options for Lainfiesta to obtain medical care is irrelevant"); Myers v. Dolac, 2013 WL

5175588, *12 (W.D.N.Y. 2013) ("Myers contends that . . . Dolac purposefully impeded Myers's

treatment . . . by ignoring or destroying his sick call requests. Myers has testified that he received

no treatment for his . . . condition. These factual assertions, if proved at trial, are sufficient for a

reasonable jury to conclude that Dolac knew of Myers's medical condition and acted deliberately

to deny him treatment").

        Plaintiff also attaches his October 20, 2013 letter to Dr. Rao, stating "I wrote to

you directly two weeks ago concerning my medical condition, where I explain that I was . . .

[experiencing numbness] in my left hand . . . . along with constant extreme pain", and inquiring

whether he had received his "first request to see a medical provider concerning this condition and

if so I would greatly appreciate any assistance you can provide in getting me seen by medical

staff". [54], p. 7 of 11. This letter appears to suggest that the first request plaintiff made to Dr.

Rao to be seen by medical staff was on or about October 4, 2013 - just 11 days before he was

seen by medical staff on October 15, 2013. [51], Bates No. 00376.[9]  Plaintiff's Ambulatory

_____

     [9]      Notably, when plaintiff was seen by medical staff on October 15, 2013, his Ambulatory
Health Record indicates that his only complaints at that time were that he needed a new back brace and
medical boots. [51], Bates No. 00376.  Not contained in that record is any indication that plaintiff

Health Records also indicate that on November 26, 2013, approximately 1 month after plaintiff's letter to Dr. Rao, he was seen for these complaints and prescribed Neurotin. [54], pp. 5, 6 of 11.

Defendants alternatively argue that even if plaintiff's October 20, 2013 letter to Dr. Rao established that, like Nurse Administrator Michalek, Dr. Rao had at least some personal involvement in the denial of plaintiff's sick call requests, plaintiff failed to exhaust his administrative remedies arising from his claim that he was denied sick call visits. Defendants' Memorandum of Law [49], Point III. Defendants do not dispute that plaintiff filed grievances on August 3, 2012 for his claim that his pain medications from Greenhaven were discontinued (Grievance no. 60003-12; [33], Bates No. 00024-26), and on October 23, 2013 for his claim that his back brace was confiscated (Grievance no. 61993-13; [33], Bates No. 00037), but contend that no grievance was ever filed by plaintiff concerning his claim that his sick call requests were being ignored or that he was being denied access to medical staff. *See* Romesser Declaration [48], ¶9 .

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules as a precondition to filing a federal lawsuit." Espinal v. Goord, 558 F.3d 119, 124 (2d Cir. 2009). "The benefits of exhaustion can be realized only if the prison grievance system is given a fair

---

complained that his sick call requests had been ignored for the previous 14 months, that he required pain medications, or that he was experiencing back pain.

opportunity to consider the grievance.  The prison grievance system will not have such an

opportunity unless the grievant complies with the system's critical procedural rules." Woodford

v. Ngo, 548 U.S. 81, 95 (2006).

"To satisfy the exhaustion requirement set forth in the [PLRA], a New York State

inmate is generally required to follow the grievance procedure prescribed in 7 N.Y.C.R.R.

§701.5.  [Within twenty-one days of the relevant occurrence,] [t]he inmate must submit a

grievance . . . to the Inmate Grievance Program ('IGP') supervisor.  The grievance is then

forwarded to the Inmate Grievance Resolution Committee ('IGRC'), which has sixteen days to

resolve it informally or to conduct a hearing.  If dissatisfied, the inmate may, within seven days

after receipt of the IGRC's determination, appeal to the facility superintendent, who has twenty

days to render a decision.  The inmate then has another seven days after receiving the

superintendent's decision to take the final step, an appeal to the Central Office Review

Committee ('CORC').  All three steps of this grievance procedure must be completed before an

inmate may commence suit in federal court."  Seeley v. Boehlert, 2013 WL 4780908, *3

(W.D.N.Y. 2013).

Plaintiff responds to defendants' argument that he failed to exhaust his

administrative remedies by pointing to the two grievances (Grievance nos. 60003-12 and 60255-

12) he identified in his Amended Complaint.  Plaintiff's Memorandum of Law [53], p. 5 of 34.

However, neither of those grievances address defendants' alleged failure to honor his sick call

requests.  As discussed above, Grievance no. 60003-12 addressed the discontinuation of the pain

medications plaintiff had received while at Greenhaven, not the refusal to honor sick call

requests.  Indeed, at the time he filed that grievance on August 3, 2012, he could not have been

complaining of the denial of sick call requests or to be seen by medical staff, as he was seen on

the previous day by Dr. Rao and he was seen again by medical staff approximately two weeks

later on August 17, 2012.  Likewise, Grievance no. 60255-12, submitted by plaintiff in October

2012, concerned the denial of recreation and food by a non-party corrections officer.  Miller

Declaration [45], p. 31 of 57.

      "[A] claim may be exhausted when it is closely associated with, but not explicitly

mentioned in, an exhausted grievance, as long as the claim was specifically addressed in the

prison's denial of the grievance and, hence, was properly investigated."  Percinthe v. Julien,

2009 WL 2223070, *4 (S.D.N.Y. 2009).  However, the alleged failure to acknowledge plaintiff's

sick call requests or deny him access to medical staff was not part of the investigation of either

claim.  Indeed, CORC's December 19, 2012 decision on Grievance no. 60003-12 advised him to

address his concerns about his back pain through sick call.  Amended Complaint [27], p. 47 of

73.  Thus, the denial of sick call requests was plainly not the subject of the investigation into that

grievance.

      Notwithstanding plaintiff's failure to exhaust his administrative remedies, the

Second Circuit has cautioned that "while the PLRA's exhaustion requirement is mandatory . . .

certain caveats apply."  Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006); *see*

*also* Pacheco v. Drown, 2010 WL 144400, *20 (N.D.N.Y. 2010).  "These caveats fall into three

categories: when (1) administrative remedies are not available to the prisoner; (2) defendants

have either waived the defense of failure to exhaust or acted in such as way as to estop them from

raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the

grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement."

Id. (*citing* Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)).[10]  Defendants raised

exhaustion as an affirmative defense in their Answer to the Amended Complaint.  [29], ¶14,

Sixth Defense.  Yet, in his response to defendants' motion, plaintiff offers no explanation as to

why, notwithstanding his familiarity with the grievance procedures at Attica, he failed to exhaust

his administrative remedies or why the exhaustion requirement should be excused.

      I note that in his Amended Complaint, plaintiff alleges that he did not receive a

decision on his appeal of his grievance concerning the discontinuation of pain medication (no.

60003-12) until more than a year later.  Amended Complaint [27],  ¶¶22, 39; [33], Bates Nos.

00024-26.  However, this provides no excuse for why he did not file a grievance concerning his

inability to use sick call and be seen by medical staff, a distinct complaint. Therefore, I

recommend that this claim be dismissed.


### 3.    Confiscation of Plaintiff's Back Brace

      The Amended Complaint alleges that plaintiff's back brace "was taken because

Supervisor stated that plaintiff had no permit to wear one".  Amended Complaint [27], ¶55.

Defendants deny that they had any role in the confiscation of his back brace, which was

confiscated by security staff on September 28,  2013 because the permit issued for the back brace

had expired.  *See* Rao Declaration [47], ¶19; Michalek Declaration [46], ¶19.  Plaintiff does not

---

[10]    Woodford held that "proper exhaustion of administrative remedies" requires "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)". 548 U.S. at 90 (emphasis omitted). "While the Second Circuit has left unresolved the continuing vitality of the Hemphill exceptions in light of the Supreme Court's ruling in Woodford . . . Hemphill remains good law, and the Court must therefore consider whether any exceptions apply to Plaintiff's failure to exhaust." Rambert v. Mulkins, 2014 WL 2440747, *11 (S.D.N.Y. 2014).

dispute that defendants had no personal involvement in the confiscation of his back brace.
Indeed, in his October 23, 2013 grievance (no. 61993-13) concerning this issue, he stated that it
was confiscated during a wall search when he could not produce a permit for it. [33], Bates No.
00037.  It is also undisputed that it was plaintiff's responsibility to obtain a renewed permit
before its expiration.  Defendants' Statement of Undisputed Facts [44], ¶28.  Therefore, to the
extent that plaintiff's deliberate indifference claim is based on the confiscation of his back brace,
I recommend that it be dismissed.

Defendants also interpret the Amended Complaint as alleging that they were
deliberately indifferent by not giving him "a second brace when his initial back brace was taken
from him by security after his permit had expired".  Defendants' Memorandum of Law [49], p. 2
of 15.  However, as defendants note, plaintiff was issued a new permit for a back brace on
November 26, 2013.  Defendants' Statement of Undisputed Facts [44], ¶27.

Lastly, to the extent plaintiff is alleging that defendants were deliberately
indifferent for the delay between his sick call visit on October 15, 2013 at which he requested a
new back brace, and when he was ultimately provided with a new back brace on November 26,
2013, that claim similarly lacks merit.  *See* October 23, 2013 Grievance (no. 61993-13) [33],
Bates No. 00037 ("I went to sickcall on . . . 10/15/13 and still have not recive [*sic*] my back
brace. This is the reason for this grievance").  Plaintiff's October 15, 2013 Ambulatory Health
Record states "call out to see provider for review". [51], Bates No. 00376.  In investigating
plaintiff's grievance concerning his back brace, Nurse Administrator Michalek prepared a
Memorandum on October 31, 2013 to the Inmate Grievance Program Supervisor stating that
plaintiff "is scheduled to see a provider to assess his need for the back brace" [33], Bates No.

00040.

Nothing in the record indicates that either of these defendants acted intentionally to withhold or delay the back brace. Nor were plaintiff's medical needs ignored while he awaited to be seen by medical staff for a new back brace as his Ambulatory Health Records reflect that he was then seen at sick call on November 19, 2013 and was provided with Motrin. [54], p. 5 of 11. As discussed above, it is also undisputed that it was plaintiff's obligation to have his back brace permit timely renewed to avoid this scenario. Defendants' Statement of Undisputed Facts [44], ¶28. Therefore, I recommend that this portion of plaintiff's claim be dismissed.

**C.     Alleged Withholding of Discovery by Defendants**

Among the arguments raised by plaintiff in opposition to defendants' motion for summary judgment, he alleges that defendants failed to disclose two documents. [54], p. 1 of 11. The first is Michelle Artus' October 26, 2012 Memorandum to plaintiff responding to his October 16, 2012 correspondence to the Superintendent, which advised him that there had been a chart review by the Nurse Administrator, that he had no upcoming referrals, and that if he needed to be seen by medical staff, he was to sign up for call (id., p. 8 of 11). The second is plaintiff's October 20, 2013 letter to Dr. Rao stating that he had written to Dr. Rao two weeks earlier concerning his medical condition (id., p. 7 of 11).

Significantly, plaintiff was in possession of these documents prior to any exchange of discovery between the parties. *See* [27], p. 39 of 73; [32], p. 19 of 36. However, he did not raise this issue at any time during the course of the period for completion of fact discovery, and instead waited until his opposition to defendants' motion for summary

-16-

judgment to first raise it.  Under these circumstances, I conclude that plaintiff has failed to timely

raise this issue.  *See* <u>Harper v. Henton</u>,  2014 WL 1304594, *8 (S.D.Ill. 2014) (Plaintiff "had

plenty of time prior to the close of discovery to seek discovery from Defendants or to bring any

discovery issues, including Defendants' alleged failure to turn over documents, to the Court's

attention. Plaintiff never did so and, instead, waited until his responsive brief to the summary

judgment to raise discovery issues. By then, the time for settling discovery disputes had long

since passed. Thus, the Court will not make any negative inferences based on Defendants'

alleged failure to produce certain discovery as Plaintiff requests").

There is also no prejudice to plaintiff from defendants' alleged failure to produce

these documents, since plaintiff has had them throughout the course of this litigation and I have

considered them in connection with plaintiff's opposition to defendants' motion for summary

judgment.  Nor does he point to any documents that he believes the government has withheld

and that are not in his possession.


## CONCLUSION

For these reasons, I recommend  that the defendants' motion for summary

judgment [43] be granted.

Unless otherwise ordered by Judge Skretny, any objections to this Report and

Recommendation must be filed with the clerk of this court by July 27, 2015 (applying the time

frames set forth in Fed. R. Civ. P. ("Rules") 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for

extension of this deadline must be made to Judge Skretny.  A party who "fails to object

timely . . . waives any right to further judicial review of [this] decision".  <u>Wesolek v. Canadair</u>

Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: July 8, 2015

_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge